In re the ESTATE OF T.S. FOXWORTH, Deceased.

**L.J. FOXWORTH, Appellant,**

v.

**Jesse Lewis FOXWORTH, Personal Representative of the Estate of T.S. Foxworth, Deceased, Respondent.**

No. 14980.

Missouri Court of Appeals, Southern District, Division One.

June 26, 1987.

W.H. Thomas, Jr., Thomas, Birdsong, Clayton & Haslag, P.C., Rolla, for appellant.

No appearance for respondent.

CROW, Chief Judge.

L.J. Foxworth ("appellant") appeals from an order denying his petition to remove Jesse Lewis Foxworth ("respondent") as the personal representative of the estate of T.S. Foxworth, deceased.

T.S. Foxworth died October 4, 1985.

On October 28, 1985, the Probate Division of the Circuit Court of Pulaski County entered an order admitting to probate as the last will and testament of T.S. Foxworth an instrument dated April 20, 1982. Paragraph "Sixth" of that instrument provided: "I hereby appoint my ... nephew, JESSE LEWIS FOXWORTH ... as Execu-

tor of this my LAST WILL AND TESTA-MENT...."

On November 1, 1985, the Probate Division entered an order naming respondent as personal representative of the estate of T.S. Foxworth, deceased, and directing that letters testamentary be issued to respondent.

On July 29, 1986, appellant filed in the Probate Division a petition for removal of respondent as personal representative. The petition alleged, among other things, that (1) a suit had been filed "on behalf of various brothers, sisters, nieces and nephews" of T.S. Foxworth, to contest "the alleged will of the decedent dated April 20, 1982," (2) appellant is one of the plaintiffs in that suit "and is thus a person interested in this estate," (3) at the time respondent was appointed personal representative, respondent failed to advise the court "that he had been convicted of a felony crime in the State of Arkansas," and (4) respondent "is not qualified to serve as personal representative because he is under legal disability as a result of the conviction."

An evidentiary hearing on the petition was conducted by the Probate Division on August 27, 1986. Appellant presented documentary evidence that on October 17, 1977, in the Circuit Court of Garland County, Arkansas, respondent was adjudged guilty, per jury verdict, of two violations of Ark.Stat.Ann. §§ 82–2605(c)(10) and 82–2617(a)(1)(i) (1976), and sentenced to five years' imprisonment for each violation, the sentences to run consecutively.[1] Respondent, called as a witness at the hearing by appellant, disclosed that each violation was "sale of heroin," a felony in Arkansas. Respondent added that he served "29 months altogether" in confinement, that he was thereafter paroled, and that he was ultimately released from supervision prior to the death of T.S. Foxworth. According to respondent, T.S. Foxworth, at the time he executed his will, was aware of respondent's convictions. Respondent explained that he resided at a "trailer park" owned by T.S. Foxworth from April or May, 1980, until T.S. Foxworth died, and that T.S. Foxworth "signed papers with the Missouri [Parole] Board."

On October 8, 1986, the Probate Division entered an order stating that at the time respondent was appointed personal representative, he "failed to advise the Court that he had been convicted of felony crimes in the State of Arkansas." The order continued:

"[Respondent] has never been pardoned for said crimes, but has served his sentence and completed supervision by the Board of Probation and Parole.

Having examined Sections 473.117 and 561.026, Revised Statutes of Missouri, the Court concludes that [respondent] is not under legal disability as the result of a conviction of a crime because the only collateral consequence of his convictions is that he is forever disqualified from serving as a juror.

WHEREFORE, the Petition for Removal of Personal Representative is overruled."

This appeal followed.

Section 472.160, RSMo 1986, provides:

"1. Any interested person aggrieved thereby may appeal to the appropriate appellate court from the order ... of the probate division of the circuit court in any of the following cases:

. . . .

(9) On all orders revoking letters testamentary or of administration;

. . . .

(13) On all orders denying any of the foregoing requested actions;

. . . ."

■ An order refusing to remove or revoke the appointment of an administrator was held appealable in *In re Estate of Erwin*, 611 S.W.2d 564, 567[6] (Mo.App. 1981), and an order denying a motion to revoke letters of administration was held appealable in *In re Dugan*, 309 S.W.2d 137, 140[2] (Mo.App.1957). Accordingly, we

---

1. The judgment was affirmed on appeal. *Foxworth v. State*, 263 Ark. 549, 566 S.W.2d 151 (1978).

hold that the order of the Probate Division in the instant case is appealable.[2] That order, as we have seen, refers to two statutes. They follow.

Section 473.117, RSMo Supp.1985, the revision in effect at the time letters testamentary were issued to respondent, provides, in pertinent part:

"1. None of the following persons shall be appointed as a personal representative:

. . . .

(3) A person who is under legal disability as a result of conviction of a crime;

. . . ."

Section 561.026, RSMo Cum.Supp.1984, the revision in effect at the time letters testamentary were issued to respondent, provides:

"Notwithstanding any other provision of law, a person who is convicted:

(1) Of any crime shall be disqualified from registering and voting in any election under the laws of this state while confined under a sentence of imprisonment;

(2) Of a felony or misdemeanor connected with the exercise of the right of suffrage shall be forever disqualified from registering and voting;

(3) Of any felony shall be forever disqualified from serving as a juror."

Appellant, in his brief, notes another statute, § 473.140, RSMo Cum.Supp.1984, which provides, in pertinent part:

"If any personal representative . . . is convicted of a felony or other infamous crime, . . . the court, upon its own motion, or upon complaint in writing made by any person interested supported by affidavit, after notice to the personal representative, and to the attorney of record, if any, of any personal representative who cannot be served with notice in this state, shall hear the matter and may revoke the letters granted."

Appellant concedes that § 473.140, above, affords no basis for removing re-

spondent, as respondent's conviction occurred *before* he was appointed personal representative. Appellant argues, however, that inasmuch as § 473.140 authorizes removal of a personal representative convicted of a felony *after* his appointment, it would "introduce an incongruity in the law" were we to hold that § 473.117.1(3), quoted earlier, does not compel the removal of respondent. Appellant argues, "If the Probate Division's ruling is sustained, nearly any convicted felon would be qualified to serve as personal representative in spite of Section 473.117.1(3)."

The provision that no person under legal disability as a result of conviction of a crime shall be appointed as a personal representative first appeared in § 473.117 on January 1, 1981. S.B. 637, Laws 1980, p. 459, effective January 1, 1981.

Two years earlier, on January 1, 1979, § 561.016, RSMo 1978, took effect. It was part of The Criminal Code, S.B. 60, Laws 1977, pp. 658–718. Section 561.016, which has remained unchanged since its adoption, provides, in pertinent part:

"1. No person shall suffer any legal disqualification or disability because of a . . . conviction of a crime or the sentence on his conviction, unless the disqualification or disability involves the deprivation of a right or privilege which is

(1) Necessarily incident to execution of the sentence of the court; or

(2) Provided by the constitution or the code; or

(3) Provided by a statute other than the code, when the conviction is of a crime defined by such statute; or

(4) Provided by the judgment, order or regulation of a court, agency or official exercising a jurisdiction conferred by law, or by the statute defining such jurisdiction, when the . . . conviction or the sentence is reasonably related to the competency of the individual to exercise

**2.** The order here is unlike the order appealed from in *Estate of Seabaugh,* 654 S.W.2d 948 (Mo.App.1983). There, we held that no appeal lay from an order denying an *application* for

letters of administration by a putative daughter of a decedent, denying a like *application* by a sister of the decedent, and directing that letters be *issued* to the public administrator.

the right or privilege of which he is deprived."

Prior to adoption of The Criminal Code, there was a statute concerning the effect of a sentence to imprisonment on the convict's civil rights. That was § 222.010, RSMo 1969, which provided:

"A sentence to imprisonment in an institution within the state department of corrections for a term less than life suspends all civil rights of the persons so sentenced during the term thereof, and forfeits all public offices and trust, authority and power; and the person sentenced to imprisonment for life shall thereafter be deemed civilly dead."

The above statute was repealed by The Criminal Code, effective January 1, 1979. S.B. 60, Laws 1977, pp. 658–59, 718.

Prior to adoption of The Criminal Code, there were sundry statutes providing for various disabilities and forfeitures upon conviction of designated crimes. Our examination of chapters 556 through 564, RSMo 1969, as amended, has produced a list of such statutes, set forth below.[3] In regard thereto, § 222.030, RSMo 1969, provided:

"When any person shall be sentenced upon a conviction for any offense, and is thereby, according to the provisions of chapters 556 to 564, RSMo, disqualified to be sworn as a juror in any cause, or to vote at any election, or to hold any office of honor, profit or trust within this state, such disabilities may be removed by a

pardon by the governor, and not otherwise."

Section 222.030, above, and the statutes listed in footnote 3 were—like § 222.010, RSMo 1969, quoted earlier—repealed by The Criminal Code, effective January 1, 1979. S.B. 60, Laws 1977, pp. 658–59, 718.

■ It thus appears that one of the objectives of The Criminal Code was to reduce the number of statutes providing for collateral consequences of criminal convictions, and to place all statutes dealing with that subject in one location.

That is borne out by chapter 561, RSMo 1978. It is entitled, "Collateral Consequences of Conviction," and comprises three sections. They are § 561.016, quoted earlier in pertinent part, § 561.026, quoted earlier in full, and § 561.021, set forth below.[4]

The Criminal Code is based on the 1973 Proposed Criminal Code, prepared by the Committee to Draft a Modern Criminal Code. The Committee Comment on the section that became § 561.016 appears in 40 V.A.M.S. pp. 213–15 (1979), and provides, in pertinent part:

"... this general section is the foundation of the recommended proposal to rationalize the collateral consequences of a criminal conviction. As indicated by the proliferation of statutory provisions now on the books there is a need for general provisions on the matter of disqualification or disability following conviction.

---

**3.** Sections 557.460, 557.490, 558.130, 558.340, 558.380, 559.100, 559.470, 560.610 and 564.710, RSMo 1969, and 561.340, RSMo Cum.Supp. 1975.

**4.** Section 561.021, RSMo 1986, carried forward unchanged from RSMo 1978, states:

"1. A person holding any public office, elective or appointive, under the government of this state or any agency or political subdivision thereof, who is convicted of a crime shall forfeit such office if

(1) He is convicted under the laws of this state of a felony or under the laws of another jurisdiction of a crime which, if committed within this state, would be a felony; or

(2) He is convicted of a crime involving misconduct in office, or dishonesty; or

(3) The constitution or a statute other than the code so provides.

2. Except as provided in subsection 3, a person convicted under the laws of this state of a felony or under the laws of another jurisdiction of a crime which, if committed within this state, would be a felony, shall be ineligible to hold any public office, elective or appointive, under the government of this state or any agency or political subdivision thereof, until the completion of his sentence or period of probation.

3. A person convicted under the laws of this state or under the laws of another jurisdiction of a felony connected with the exercise of the right of suffrage shall be forever disqualified from holding any public office, elective or appointive, under the government of this state or any agency or political subdivision thereof."

No person shall suffer any legal disqualification or disability because of a finding of guilty or a criminal conviction unless he falls within one or more of the four subsections, 1(1) to (4)."

The Summary Comment to 1973 Proposed Code, appearing in 40 V.A.M.S. pp. 227–28 (1979), provides:

"The approach of the Code is based on the premise that all persons are 'civilly alive' but may be deprived of certain privileges of citizenship because of conviction of crime. The present Missouri approach is based on the historical premise under the common law and § 222.010 RSMo that a sentence to imprisonment for a felony suspends all civil rights, and in the case of a life sentence, creates a 'civilly dead' person. This requires knowledge of what all the 'civil rights' are. The researcher must look to the common law cases and then to the various statutory and case law exceptions to the suspension of civil rights that have been created. Under the Code approach, all disqualifications and disabilities which are not necessarily incident to the execution of the sentence must be expressly listed. By defining these disqualifications and disabilities and stating when they apply, much of the present confusion is avoided and a sounder basis for rehabilitation is created."

Assuming, *without deciding*, that the Probate Division in the instant case had authority to remove respondent as personal representative if, under the statutes extant at the time of his *appointment*, he was ineligible to serve as a personal representative, our task is to determine whether respondent was "under legal disability as a result of conviction of a crime" at the time he was appointed. If so, respondent, by reason of § 473.117.1(3), RSMo Supp.1985, quoted earlier, was ineligible for appointment as personal representative.

To answer that question, we begin by recalling that §§ 222.010 and 222.030,

RSMo 1969, together with the statutes enumerated in footnote 3, *supra*, were, as heretofore explained, repealed by The Criminal Code, effective January 1, 1979. Consequently, we look to The Criminal Code to learn whether respondent was, at the time of his appointment (November 1, 1985), under legal disability as a result of conviction of a crime.

As previously noted, at the time of respondent's appointment the segment of The Criminal Code regarding collateral consequences of conviction was chapter 561, RSMo 1978, as amended, consisting of three statutes: § 561.016, RSMo 1978; § 561.021, RSMo 1978; and § 561.026, RSMo Cum.Supp.1984.

Taking those statutes one by one, and beginning with § 561.021 (footnote 4), we find nothing that disqualified respondent from appointment as personal representative at the time the appointment was made. Subsection "1" of § 561.021 provides for forfeiture of a public office upon conviction of certain crimes.[5] Subsection "2" of § 561.021 provides that a person convicted of certain crimes is ineligible to hold public office until completion of his sentence or probation. Subsection "3" of § 561.021 disqualifies a person convicted of a felony connected with the exercise of the right of suffrage from forever holding public office. Even if one assumes (which we do not) that the position of personal representative is a "public office" within the meaning of § 561.021, that section would not apply here, as respondent was convicted eight years prior to his appointment as personal representative, and he had served his sentence and completed his parole long before his appointment.

Section 561.026, which we next consider, likewise supplies no basis for removing respondent. An examination of that statute, quoted *supra*, reveals that at the time of respondent's appointment, the only possible disability he suffered thereunder by reason

5. The task of identifying and listing all provisions regarding removal from particular public offices of persons convicted of crimes is beyond the scope of this opinion. Such provisions include, however, Mo. Const. art. V, § 24.3 and .5 (1945, amended 1976); Mo. Const. art. VII, § 1 (1945); § 106.020, RSMo 1986.

of his Arkansas conviction was ineligibility to serve as a juror. § 561.026(3).

Section 561.016, quoted *supra* in pertinent part, similarly affords no ground for removing respondent. Taking that statute subsection by subsection, we look first to subsection "1(1)." That subsection provides for disqualification or disability because of conviction of a crime only if the disqualification or disability involves the deprivation of a right or privilege necessarily incident to execution of the sentence. Explaining the purpose of that subsection, the Committee Comment thereunder states:

"Subsection 1(1) preserves disabilities necessarily incident to execution of the sentence. A person who is in prison would not be permitted to engage in acts inconsistent with incarceration; *e.g.*, he obviously could not continue any outside employment." 40 V.A.M.S. p. 214 (1979).

Had respondent still been incarcerated at the time T.S. Foxworth died, respondent would have arguably been disqualified from serving as personal representative, as his confinement would have made it difficult, if not impossible, for him to carry out the duties of personal representative. Such, however, were not the circumstances at the time respondent was appointed. Therefore, we find nothing in subsection "1(1)" disqualifying respondent from serving as personal representative.

Subsection "1(2)" of § 561.016 provides for disqualification or disability because of conviction of a crime only if the disqualification or disability involves the deprivation of a right or privilege provided by the constitution or The Criminal Code. Explaining the purpose of that subsection, the Committee Comment thereunder states:

"Subsection 1(2) recognizes that either the Constitution or the Code may require a specific legal disability. *E.g.*, Mo. Const. art. VIII § 2 provides that 'No ... person .. while confined in any public prison shall be entitled to vote ...'" 40 V.A.M.S. p. 214 (1979).

Appellant directs us to no provision in the constitution or The Criminal Code providing that a person convicted of a felony is forever disqualified from serving as personal representative.

Subsection "1(3)" of § 561.016 provides for disqualification or disability because of conviction of a crime only if the disqualification or disability involves the deprivation of a right or privilege provided by a statute other than The Criminal Code, when the conviction is of a crime defined by such statute. Explaining the purpose of that subsection, the Committee Comment thereunder states:

"Subsection 1(3) permits retention of any provisions outside of the Code, wherever they might be, which make disqualification or disability a penalty for an offense defined by such statute. There should be very few of these statutes containing special penalties if the Code is enacted and the present disqualification and disability statutes are repealed and replaced by the Code provisions." 40 V.A.M.S. p. 214 (1979).

The Criminal Code, as noted earlier, repealed §§ 222.010 and 222.030, RSMo 1969, together with the disqualification and disability statutes listed in footnote 3, *supra*. Appellant directs us to no provision outside The Criminal Code providing that a person convicted of a felony is forever disqualified from serving as personal representative.

Subsection "1(4)" of § 561.016 provides for disqualification or disability because of conviction of a crime only if the disqualification or disability involves the deprivation of a right or privilege provided by the judgment, order or regulation of a court, agency or official exercising a jurisdiction conferred by law, or by the statute defining such jurisdiction, when the commission of the crime or the conviction or the sentence is reasonably related to the competency of the individual to exercise the right or privilege of which he is deprived. Explaining the purpose of that subsection, the Committee Comment thereunder states:

"Subsection 1(4) allows a deprivation when it is provided in a judgment, order or regulation of a court, agency or official exercising jurisdiction conferred by law, whenever the commission of the crime of [or ?] the conviction or the sen-

tence 'is reasonably related' to the competency of the offender to exercise the right or privilege of which he is deprived. This is the most important provision in this section. The present law sometimes contains blanket restrictions against employment in certain regulated areas of persons convicted of crimes. Sometimes conviction is relevant to the public safety interests underlying the regulation, but often it is not. By eliminating irrational barriers to employment, we assist offenders in reintegrating themselves into the community. Thus, instead of providing that no liquor license shall be issued to any person 'convicted, since the ratification of the twenty-first amendment to the Constitution of the United States, of a violation of the provisions of any law applicable to the sale of intoxicating liquor, or who employs in his business as such dealer, any person ... who has been convicted of violating such law since the date aforesaid,' § 311.060 RSMo, the Code provides a reasonable rule which would authorize a licensing agency to refuse to grant a license to an applicant whose criminal record and other circumstances indicate that he would endanger the particular group or industry protected by the agency's licensing power. Many Missouri statutes now leave the matter of licensing to the discretion of the licensing agency, without arbitrary restrictions. *E.g.*, § 334.100 RSMo, giving the state board of registration for the healing arts the power to license individuals guilty of 'unprofessional or dishonorable conduct,' including 'conviction of a felony.' A prospective physician might have committed a felony followed by a successful period of rehabilitation. The legislature has wisely given the board the power to decide whether he should be licensed." 40 V.A. M.S. pp. 214–15 (1979).

The import of subsection "1(4)," as we perceive it, is that while conviction of a crime does not forever disqualify one from being appointed personal representative in a decedent's estate, the court authorized to make such appointment may properly consider whether the conviction is reasonably related to such person's competency to satisfactorily discharge the duties of personal representative.

Such an interpretation is in harmony with § 473.140, RSMo Cum.Supp.1984, quoted earlier in pertinent part. That section, it will be remembered, provides that if a personal representative is convicted of a felony, the court is authorized to hear the matter, and *may* revoke the appointment. The fact that revocation is discretionary, not mandatory, demonstrates that the General Assembly did not intend that a personal representative convicted of a felony automatically forfeit his appointment.

Appellant's contention, as we understand his brief, is that inasmuch as respondent, by reason of § 561.026(3), is forever disqualified from serving as a juror, respondent is "under legal disability as a result of conviction of a crime" within the meaning of § 473.117.1(3), and is thus ineligible to be appointed a personal representative. Said another way, appellant's theory is that *any* legal disability resulting from conviction of a crime, irrespective of what such disability is, disqualifies a person under § 473.117.1(3) from serving as a personal representative. Implicit in appellant's argument is the assumption that § 561.026(3) forever disqualifies a person from serving as a juror if such person is convicted of a felony in *any* jurisdiction, not just in Missouri. As shall become apparent *infra*, it is unnecessary to decide whether that assumption is correct.

Section 561.021, as we have seen, does not forever disqualify a person convicted of a felony from holding a Missouri public office, but instead bars such person only until completion of his sentence or period of probation. Permanent disqualification from holding a Missouri public office occurs only upon conviction of a felony connected with the exercise of the right of suffrage. § 561.021.3.

Section 561.026, as we have seen, does not forever disqualify a person convicted of a crime from registering and voting in Missouri, but instead bars such person only while confined under a sentence of imprisonment. Only a person convicted of a

crime connected with the exercise of the right of suffrage is forever disqualified from registering and voting in Missouri. § 561.026(2).

As the General Assembly did not, except in the limited instances discussed above, forever disqualify a person convicted of a crime from registering and voting, or from holding public office, we do not believe the General Assembly intended, in enacting chapter 561, RSMo 1978, to permanently disqualify a person convicted of a felony from being appointed personal representative in a decedent's estate. Instead, the court making the appointment is to consider whether such conviction is reasonably related to the competency of the individual to fulfill the duties of personal representative. § 561.016.1(4).

We therefore hold that respondent's Arkansas conviction did not automatically disqualify him from appointment as personal representative.

Appellant did not, at the hearing in the Probate Division, offer evidence supporting any other ground for respondent's removal, and appellant does not, on appeal, contend that the Probate Division should have found that respondent is an incompetent, unsuitable or improper person to serve as personal representative. § 473.110.1, RSMo Supp.1985. The order denying appellant's petition to remove respondent as personal representative is, accordingly, affirmed.

GREENE, P.J., and HOLSTEIN, J., concur.